### FREEMAN v. EVANS.

(Circuit Court of Appeals, Third Circuit. August 30, 1907. On Motion to Rehear, October 21, 1907. On Rehearing, March 16; 1908.)

#### No. 28.

1. TRIAL—RECEPTION OF EVIDENCE—EFFECT OF VERDICT ON RULING.

The action of a court in admitting or rejecting testimony must be viewed from the standpoint of the time when the testimony was offered, and not from that of the verdict, and in an action on the case in the nature of conspiracy against two defendants, in which the gist of the action was the tort, and not the conspiracy, and the acts charged were such that they might have been committed by both or either defendant, so that a judgment against both or either was permissible, evidence that was competent and admissible on the question of conspiracy in the trial of both defendants could not become incompetent or inadmissible by reason of a verdict against one alone.

#### On Rehearing.

2. FRAUD—REPRESENTATIONS MADE TO AGENT—LIABILITY TO PRINCIPAL.

Where, in a transaction involving an exchange of real estate between plaintiff and defendant, plaintiff was represented by an attorney, who personally conducted all the negotiations in her behalf, his knowledge and opportunity to investigate matters of title and statements made by defendant were in law those of plaintiff, and defendant is not liable for fraud and deceit, in the absence of conspiracy between him and the attorney, unless the latter could have recovered on the same ground if he had been the principal.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 149 Fed. 1020.

George P. Rich, and John G. Johnson, for plaintiff in error.

George T. Hunsicker, for defendant in error.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge. Regina Evans, the defendant in error, brought, in December, 1904, an action of trespass in the Circuit Court of the United States for the Eastern District of Pennsylvania, against Henry G. Freeman, Jr., the plaintiff in error, and Wynne James. In her statement of claim, she set forth in substance, among other things, that she was the owner of a farm of 95 acres, in Bucks county, Pa., of the value of $5,400, above all incumbrances, and of live stock, crops and farming implements thereon, of the value of $3,000; that Freeman was the owner of four old brick houses in Philadelphia, assessed at the sum of $21,800, which was in excess of their value; that James was an attorney at law and was employed by the plaintiff for the purpose of effecting a cash private sale of her farm and property thereon;

that Freeman and James "did fraudulently, deceitfully, maliciously and unlawfully conspire, combine, confederate and agree together to cheat and deprive plaintiff of her said real and personal property, by effecting a fraudulent exchange thereof for a worthless equity in said houses," and by other deceitful and fraudulent devices particularly set forth in the declaration; and succeeded in accomplishing the purpose of their conspiracy. The defendants severally having pleaded not guilty, the case went to trial and, May 3, 1905, a sealed verdict was brought in in favor of the plaintiff, for $7,273.33 against Henry G. Freeman, Jr., one of the defendants, and this verdict was formally recorded against him. James' name was not mentioned in the verdict. On May 6, 1905, motion was made by Freeman's counsel for a new trial, and also for arrest of judgment. On May 10, 1905, counsel for James filed with the clerk of the court below a præcipe for the entry of judgment in favor of James, upon the above-mentioned verdict, which judgment was entered upon the record accordingly. The motion for a new trial was granted September 6, 1905, the court, among other things, saying:

"Taking oral and documentary evidence together, there was ample proof to sustain the plaintiff's claim, and the jury found a verdict for $7,273.33 in favor of claimant but only against Freeman, one of the defendants. * * * The verdict against Freeman alone cannot be sustained in view of the fact that the statement claims for an unlawful combination between Freeman and plaintiff's attorney, James, and the evidence submitted by her tended to prove that allegation, and a new trial should therefore be granted, and it is so ordered."

On November 2, 1905, plaintiff filed a petition with the court below, praying that the motions for a new trial and arrest of judgment might be reinstated and a reargument thereof granted, stating among other things, that the then condition of the record was such that "the plaintiff is deprived of all remedy against the defendant, or either of them, in her action of conspiracy," and that "unless plaintiff's case, if retried, retains its original form of conspiracy against both defendants, and she have a new trial as to both, she is without redress." On January 8, 1906, this petition was granted. The judgment on the verdict in favor of Wynne James, entered May 10, 1905, was ordered stricken from the record, and an opinion filed, awarding a new trial as to both defendants. To this order, striking from the record the judgment on the verdict in his favor, a writ of error from this court was sued out by James.

In submitting the case to the jury, the court below had instructed them as follows:

"Whether there is a conspiracy charged or proven, or not, if the evidence shows that by false and fraudulent representations of both or one of them, this plaintiff has suffered a damage, she would be entitled to recover against the one perpetrating the wrong upon her; or if both of them had done wrong, together or separately, whether there was a conspiracy proven or not, if you find that both or one of them perpetrated and have done this wrong, if any wrong was done, the plaintiff would be entitled to recover for the amount of the damage suffered against either one or both, as you find the evidence to be, if you find in her favor, and for such an amount as the evidence would warrant."

And further:

"If, however, you find that there is no conspiracy, and one or the other made false representations of material facts in regard· to this transaction, which resulted in damage, then you have a right to say that that one is responsible here."

In the opinion of this court on the writ of error sued out by James,. and from which the foregoing statement of facts has been taken (149 Fed. 136), we said that we were unable to concur in the reason given by the court below for granting a new trial, to wit, that the only verdict which could be rendered in this case would be either against or in favor of both defendants; and stating that, under the pleadings, we thought the court below correctly charged the jury in such manner as to permit a verdict, should the evidence so warrant, against Freeman and in favor of James, and that the jury having on the evidence found such a verdict, final judgment was properly entered thereon. The orders awarding a new trial against both defendants, and striking from the record the judgment in favor of James, were accordingly reversed, and, pursuant to the decree entered by this court, the judgment in favor of James was reinstated, leaving the order of the court below, granting a new trial to Freeman, made September 6, 1905, to stand unamended. On January 26, 1907, the court below, upon motion of plaintiff to reconsider the award of a new trial as to Freeman and reinstate the verdict against him, granted said motion and struck from the record the order awarding a new trial as to Freeman, September 6, 1905, and on January 31, 1907, judgment on the verdict against him, as reinstated, was duly entered, with interest from January 26, 1907. To the judgment thus entered, the present writ of error was sued out, and the record therein is before us.

There are numerous assignments of error; some to the admission or rejection of evidence, others to the charge of the learned trial judge, and the last three to the order of the court below striking off the order for a new trial and reinstating the verdict against the plaintiff in error, and entering judgment thereon. The defendant in error contends that the time within which the present writ of error could be taken, was six months from September 6, 1905, the date of granting a new trial as to both defendants below. The present writ of error, however, is to the judgment entered on December 31, 1906, after the order for a new trial had been stricken from the record, and the time prescribed for suing out the writ commenced to run from that date.

A careful reading of the record, in relation to the exceptions to the admission or rejection of testimony, does not disclose reversible error. The exceptions allowed, and the assignments of error based thereon, are too numerous to admit of detailed discussion, and no good purpose would be achieved thereby. The same may be said as to the numerous exceptions taken to the charge of the court. The stress of the argument of counsel for plaintiff in error, was directed to those assignments alleging error in the action of the court in setting aside its first order for a new trial against the plaintiff in error, and entering judgment on the verdict against him. The principal ground of plaintiff in error's

contention is set forth in the forty-seventh and last assignment of error. It is as follows:

"(47) The learned court below committed further error in entering judgment against the defendant, Henry G. Freeman, in this, that on the trial of the case evidence was admitted against him of James' statements and transactions made in Freeman's absence, which testimony was only admitted by the court and could not be competent as against Freeman, on the ground that he and James had engaged in a fraudulent conspiracy to defraud the plaintiff. The verdict of the jury in favor of James establishes not only that there was no conspiracy, but that no implication of wrongdoing towards the plaintiff could be drawn from this testimony as against James. Yet on the same testimony the jury found a verdict against Freeman, testimony which in a suit against him alone was utterly inadmissible."

As has been seen, this court has already in the case of James v. Evans, above referred to, decided that, under the pleadings, the court below correctly charged the jury in such manner as to permit a verdict, should the evidence so warrant, against Freeman and in favor of James, and that final judgment was properly entered upon such a verdict. It was held that, in substance the action was one on the case in the nature of conspiracy, and being a civil remedy, the gist of the action is not the conspiracy charged, but the tort working damage to the plaintiff. The tort in its nature was capable of commission, either by both defendants jointly, or by Freeman alone, or by James alone. Such being the law, the evidence that was competent and admissible in the trial of both defendants, in an action as of conspiracy, could not become incompetent or inadmissible by reason of the permissible verdict against one of said defendants. The action of the court, in admitting or rejecting testimony, must be viewed from the standpoint of the time when it is offered, and not from that of the verdict.

The language of this court in the case of Lear v. United States, 147 Fed. 349, 77 C. C. A. 527, though referring to a somewhat different situation, is applicable here. We there said:

"It has been suggested, however, that the ruling of the court below should now be regarded, not as of the time at which it was made, but with reference to the verdict that was subsequently rendered, and which, it is supposed, has had the effect of excluding some of the evidence from present consideration."

This suggestion was not acceded to, and after further discussion, we said:

"We are not at liberty to indulge in conjecture respecting the grounds of a verdict, or add to its terms by inference."

It would be absurd to say in such actions as this, that the jury may find both defendants guilty of the tort which was the subject of the conspiracy charged, or that they may find that there is no conspiracy and that one or other of the defendants made false representations of material facts to the damage of the plaintiff, and then say that when a jury has thus found one of the defendants guilty, the verdict cannot stand, because testimony properly relevant to the charge of conspiracy was admitted at the trial. The presumption is, however, that when a jury find only one of the defendants guilty, they have considered the evidence as to conspiracy insufficient, and confined themselves to that

which affected the individual action of the single defendant, but, as we have already said, we are not at liberty to indulge in conjecture respecting the grounds of a verdict, and unless it shall appear that positive injustice would be worked by permitting the judgment to stand, the court should not interfere therewith.

An examination of the record has not convinced us that the testimony admitted on the ground that a conspiracy had been prima facie proved to the satisfaction of the court, prejudiced the case against the plaintiff in error, in view of the testimony as to his individual conduct in regard to the tort charged. We feel constrained, therefore, to affirm the judgment against the plaintiff in error, as it stands in the court below.

### On Motion to Rehear.

PER CURIAM. Upon consideration of the petition of Henry G. Freeman, Jr., plaintiff in error, for a rehearing, it is now, October 21, 1907, ordered, that a further argument of this case will be heard at the foot of the list for the present October term, but such argument must be confined to the question whether or not the court below erred in refusing to charge that there was no evidence upon which a verdict against Mr. Freeman alone could be sustained. Counsel will be limited to one hour upon each side.

### On Rehearing.

GRAY, Circuit Judge. At the last March term, this case was heard upon a writ of error, and decision was then rendered affirming the judgment below. Upon the petition of the plaintiff in error, a rehearing was granted upon a single question hereinafter stated, which has been argued and considered at the present term. In the opinion already filed, we have stated at length the somewhat complicated situation which resulted in the suing out of this writ of error, and it is only necessary now to briefly recall the following facts:

The original suit in the court below was brought by the defendant in error against the plaintiff in error and one James, whom she charged with fraudulently, deceitfully, etc., conspiring and combining to cheat and deprive her of certain real estate and personal property. James, the codefendant of the plaintiff in error, was a lawyer of the state of Pennsylvania, who was employed by her as her counsel and agent to effect a sale or exchange of her farm in Bucks county, Pa. Pursuant to this employment, James opened negotiations with the plaintiff in error, which were finally carried to the conclusion complained of. The trial resulted in a verdict for substantial damages against Freeman alone, and a judgment as upon a verdict of "not guilty" in favor of the codefendant, James. We have already decided, on the writ of error sued out by James to the order striking off the judgment in his favor, that it was competent for the jury to find one of the defendants guilty, individually, of the tort charged, and to acquit the other, and that there was no error in the judgment entered on such verdict. When the present writ of error was before us at the March term, the argument of the plaintiff in error was confined principally to an en-

deavor to show that, as James, his codefendant, had been acquitted, the judgment against Freeman should be reversed, on the ground that the jury presumably found their verdict against him upon evidence admitted to prove a conspiracy, or upon evidence that was only competent when there had been prima facie proof, to the satisfaction of the court, of the existence of the conspiracy charged. It was this contention that was combated by the court in its opinion delivered after the former argument. In that opinion, we said, and we think rightly:

"The tort in its nature was capable of commission, either by both defendants jointly or by Freeman alone, or by James alone. Such being the law, the evidence that was competent and admissible in the trial of both defendants, in an action as of conspiracy, could not become incompetent or inadmissible by reason of the permissible verdict against one of said defendants. The action of the court, in admitting or rejecting testimony, must be viewed from the standpoint of the time when it is offered, and not from that of the verdict."

The stress of the argument of the plaintiff in error at the former hearing, was confined to this point, and the argument for a reversal was made, as if improper testimony had been admitted in the then state of the trial against both defendants, whereas the alleged impropriety of such evidence rests entirely upon the ground, that the jury afterwards acquitted James of conspiracy, or other wrong doing. It was urged that the testimony against James was not relevant as against Freeman alone. The fallacy of such an argument is apparent from the suggestion that we have already made, that the competency of this testimony must be determined as of the time it was offered, and not as of a time after the verdict. The court certainly committed no error in admitting this testimony while James and Freeman were being jointly tried. As we said in our former opinion:

"The presumption is, however, that when a jury find only one of the defendants guilty, they have considered the evidence as to conspiracy insufficient, and confined themselves to that which affected the individual action of the single defendant."

In view of the argument made before us, we dealt, as above stated, with this phase of the case as set forth in the forty-seventh assignment of error, to which our attention was mainly called, and we have no desire to make any amendment or modification of the opinion so delivered.

But our attention has now been called to the fortieth assignment of error, to wit, the refusal of the court to hold that:

"There is no evidence in the case under which the plaintiff can hold the defendant, Mr. Freeman, liable, and the jury are instructed to find a verdict in his favor."

The former presentation of the case was embarrassed by the great and unnecessary number of the assignments of error, by which the point just stated and urged at the rehearing was obscured, if not overlooked. Addressing ourselves, then, to the single question as to which we have asked the reargument to be confined, and aided by its thorough and able discussion by counsel on both sides, the court is of opinion that the judgment below should be reversed. No evidence has been discovered in the record, sufficient to warrant a finding of misrepresentation or deceit on the part of Freeman to Mrs. Evans,

and no statement made by him to her, upon which she was called to rely or to act. It is clear from her own testimony and that of her husband, that she had put the whole business in the hands of her attorney, James, and relied exclusively upon his advice, and acted in accordance therewith, and we discover no evidence to show that her attorney was deceived by anything said by Freeman in relation to the business in hand, or that any representations of fact were proved to have been made by Freeman to him, which were amenable to the charge of fraud or deceit. The plaintiff in error was not inops consilii, but was advised and protected by counsel throughout the whole negotiation. She was not deceived, unless he was deceived, and opportunities for investigation and inquiry open to her chosen lawyer, and of which he was bound to avail himself, were her opportunities as well. Matters and situations which, if plaintiff in error had been dealing with Mrs. Evans alone, would have required on his part clear and explicit explanation, were presumably understood by the lawyer and man of business with whom he was dealing as her agent.

In the absence of fraud and collusion as between James and the plaintiff in error (and in this connection we cannot ignore the verdict), we find no evidence in this record sufficient to support a verdict of guilty in an action in the nature of deceit against Freeman alone. Fraud and bad faith, if any, on the part of James towards his client, Mrs. Evans, could not be charged to Freeman, in the absence of evidence to prove a conspiracy between Freeman and James. The whole negotiation, therefore, must be viewed as if it had been between Freeman and James alone. In contemplation of law, they were dealing upon an equal footing, and Freeman can only be held to such duty, as to conduct and representations, as would be owing to a man equally with himself conversant with the business in hand, and whose special duty it was, as agent, to investigate all statements and questions as to title, incumbrance and value for himself. Of course, the exaggerated statements made upon both sides, as to the value of the property to be exchanged, offered no basis for a charge of deceit. "Mere expressions of opinion as to the value of property, are not actionable. They are regarded as "traders' talk," which every man of intelligence receives "cum grano salis." Bement v. La Dow (C. C.) 66 Fed. 189; Gordon v. Butler, 105 U. S. 553, 26 L. Ed. 1166.

"Where means of knowledge are at hand and equally available to both parties and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentation." Slaughter v. Gerson, 13 Wall. (U. S.) 383, 20 L. Ed. 627; 2 Pom. Eq. Jur. Sec. 892; Farnsworth v. Duffner, 142 U. S. 47, 12 Sup. Ct. 164 (35 L. Ed. 931); Farrar v. Churchill, 135 U. S. 615, 10 Sup. Ct. 771, 34 L. Ed. 246.

We have carefully examined all the evidence disclosed by the record. It is not necessary to discuss it in detail. It suffices to say that we are of opinion that there was no evidence upon which a verdict against the plaintiff in error alone could be sustained.

The judgment below must, therefore, be reversed.